## A93A1651. WILLIAMS v. KNIGHT et al.
### (439 SE2d 507)

SMITH, Judge.

Lawrence Williams brought an action against Jordan Knight and Steven Chandler seeking damages for personal injuries incurred when Chandler struck him during an altercation at a nightclub. A jury rendered a verdict in favor of Knight and Chandler, and Williams's motion for new trial was denied.

The evidence at trial showed that Williams met a woman at an Atlanta nightclub and spoke with her for several minutes. Sometime later the woman tapped him on the shoulder and informed him that "some kid" had struck her and called her names. She asked for Williams's advice. He offered to assist her in straightening out the "misunderstanding," and asked her to point out the offender. The woman identified Knight, who is a performer with the group New Kids on the Block, and Williams approached him. An altercation ensued between Williams and Chandler, who is Knight's bodyguard. It is undisputed that Chandler struck Williams several times and that Williams was injured. However, the evidence was in sharp conflict as to who instigated the fight and who took the first swing. Williams testified that he did not provoke Chandler at all, merely stating that he thought Chandler's "friend" owed the lady an apology and that Chandler then hit him at Knight's direction. Chandler testified that when he told Williams there would be no apology, Williams immediately attempted to strike him, and he struck back in self-defense.

1. In instructing the jury, the trial court charged on the principles of assumption of the risk and avoidance of consequences by the exercise of ordinary care for one's own safety. Williams contends this was error, as these instructions are proper only in negligence cases and not in a case such as this, in which damages are sought for the intentional tort of battery. "It is well-settled that the defenses of . . . assumption of the risk . . . and [failure to avoid consequences by the exercise of ordinary care] are not valid defenses to intentional, wilful, or wanton and reckless torts, and it is inappropriate in such cases to instruct the jury thereon." *Hopkins v. First Union Bank*, 193 Ga. App. 109, 111

(2) (a) (387 SE2d 144) (1989). See *Hendricks v. Southern Bell Tel. &c. Co.*, 193 Ga. App. 264, 266 (2) (387 SE2d 593) (1989).

As pointed out by appellees, although Williams excepted to the charge, he did so on other grounds. OCGA § 5-5-24 (a) requires that objection, including the specific grounds therefor, be made before the verdict before a litigant may complain on appeal that a given instruction is erroneous. OCGA § 5-5-24 (c) requires this court, however, "[n]otwithstanding any other provision of this Code section, . . . [to] consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not."

The question then becomes whether the erroneous charges constituted "a substantial error . . . which was harmful as a matter of law." This language has been construed to mean that in order to result in reversible error, erroneous charges to which the complainer on appeal has made insufficient objection at trial must show error directly resulting in a gross injustice or error that is " 'blatantly apparent and prejudicial to the extent that it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it.' [Cit.]" *Central of Ga. R. Co. v. Luther*, 128 Ga. App. 178, 181 (196 SE2d 149) (1973). See *Henderson v. Glen Oak, Inc.*, 179 Ga. App. 380, 382 (4) (346 SE2d 842) (1986), aff'd 256 Ga. 619 (351 SE2d 640) (1987). This Code subsection is properly invoked infrequently. However, our careful examination of the charge persuades us that the instructions given created a strong risk of misleading the jury to conclude that the principles charged constituted defenses to battery, resulting in a substantial, prejudicial error. This portion of the court's charge therefore meets the requirements in OCGA § 5-5-24 (c). Accordingly, Williams is entitled to a new trial.

2. Because of our holding in Division 1 granting Williams a new trial, we need not fully address Williams's contentions regarding the trial court's failure to grant a mistrial or, alternatively, rebuke defense counsel and give the jury a curative instruction after improper remarks made by defense counsel during opening statement. The remarks in issue, indicating and emphasizing Williams's failure to file income tax returns, were made after the trial court deferred ruling on Williams's motion in limine to exclude any reference to this matter. The court had also cautioned defense counsel that any mention of the matter during opening statements would be "at their peril."

The trial court's eventual ruling on the admissibility of this matter during the evidence phase of the trial was correct and in accordance with this court's holding in *Robert &c. Assoc. v. Tigner*, 180 Ga. App. 836, 843-844 (2) (351 SE2d 82) (1986). In *Tigner*, an action for personal injury resulting from an automobile collision on a parking lot ramp, the trial court allowed evidence that the plaintiff could

present no proof of income in the form of tax returns but refused to allow the defendant contractor to show the plaintiff's failure to file such returns, ruling that such a showing was unnecessary and would constitute evidence of a crime. On appeal by the contractor, this court affirmed, reasoning that "the prejudicial effect of the jury's speculation [regarding tax evasion] would greatly outweigh any benefit to the jury's understanding which conceivably might be generated by inferences derived from the evidence. [Cit.]" Id. at 843 (2). During the trial in this case, no evidence was presented regarding failure to file tax returns. However, defense counsel's opening statement remarks remained with the jury. Although the facts in *Tigner* may be somewhat distinguishable from those in this case, see id. at 844 (2), we find the rationale therein both persuasive and applicable, and we cannot agree with appellees that these statements were harmless error.

3. Because it may recur at retrial, we also address Williams's contention that the trial court erred in excluding the testimony of his witness Seamus McHugh.

Defendants moved in limine to exclude evidence that other members of the group had been involved in altercations and to limit the evidence at trial involving Knight and Chandler to this particular fight. The plaintiff agreed to the first limitation. The trial court denied the motion for a blanket exclusion of other incidents involving these defendants, but prohibited mention of such evidence in opening statements and deferred ruling on the admissibility of specific evidence until the time of presentation of such evidence during trial.

Williams called Knight during his case-in-chief for purposes of cross-examination. Knight testified that he had never ordered a bodyguard or anyone on his behalf to strike someone else. Williams then called McHugh for impeachment purposes, and the defendants objected. After hearing argument from both counsel, the trial court agreed with the defense objection and ruled McHugh's testimony inadmissible. Williams was permitted to present an offer of proof, which shows that McHugh would have testified that in June 1991, in Boston, he was in a car when Knight, in the company of three other individuals including a bodyguard, passed by on the street; that as he sat in his car, Knight approached, pointed out McHugh, and then instructed his bodyguard to hit him, which the bodyguard did.

The defense offered several grounds for its objection to this evidence. We find that none of the stated grounds offers a sound reason for excluding the evidence for the limited purpose of impeaching Knight's testimony. Contrary to appellees' argument, this evidence had not previously been excluded by the ruling on the motion. Nor was impeachment of Knight *on this issue* undertaken by referring to his deposition testimony, rendering appellees' argument that Knight could not have known about McHugh's complaint against him at the

time he gave the deposition utterly without merit. Moreover, because Knight denied not only that he had ordered *a bodyguard* to strike anyone but that he had ordered *anyone* to do so, appellees' objection that no showing was made that the person who struck McHugh was Knight's bodyguard was likewise insufficient.

"The law provides that an adverse witness may be impeached by several different methods. One such method is to disprove the facts to which he has testified at trial. See OCGA § 24-9-82." *Pender v. Witcher*, 194 Ga. App. 72 (2) (389 SE2d 560) (1989), rev'd on other grounds 260 Ga. 248 (392 SE2d 6) (1990). The witness was offered to impeach Knight's statement of fact that he had never ordered his bodyguard or anyone else to strike another person. As McHugh's testimony was in direct contradiction of this fact and not excludable for some other reason, it was admissible under OCGA § 24-9-82.

*Judgment reversed and remanded. Beasley, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 19, 1993 —
RECONSIDERATION DENIED DECEMBER 15, 1993 — 

*Evert & Weathersby, C. Michael Evert, Jr., Michael N. Weathersby,* for appellant.

*Goldner, Sommers, Scrudder & Bass, Glenn S. Bass, Ellis, Funk, Labovitz & Campbell, William C. Campbell,* for appellees.